824 A.2d 1104 (2003)
361 N.J. Super. 190
H. Ralph CRIPPS, individually, and as a shareholder of Inter-Link Financial, Inc., and H.R. Cripps & Associates, Plaintiffs-Respondents,
v.
Ben DIGREGORIO, Inter-Link Financial, Inc., Michael W. Holden, individually, Michael W. Holden, C.P.A., P.C., and On-Line Mortgage, Inc., Defendants-Appellants,
Theodore F. Kurilko, Jr., Defendant.
Superior Court of New Jersey, Appellate Division.
Argued August 7, 2002.
Decided June 13, 2003.
Cheryl Morrissey argued the cause for appellants (Wells, Jaworski, Liebman & Paton, attorneys; Ms. Morrissey, on the brief).
Steven Siegel, Hackensack, argued the cause for respondents (Sokol, Behot and Fiorenzo, attorneys; Joseph B. Fiorenzo, of counsel and on the brief; Mr. Siegel, on the brief).
Before Judges KING, WECKER and LISA.
The opinion of the court was delivered by WECKER, J.A.D.
In this appeal we address the availability of counsel fees and costs under R. 4:58-3 in a multi-defendant, multi-count case in which plaintiff failed to accept separate offers of judgment conveyed by all defendants on the same date. We hold that Schettino v. Roizman Development, Inc., 158 N.J. 476, 730 A.2d 797 (1999), controls on the facts before us. We affirm summary judgment dismissing the counsel fee application filed on behalf of those defendants who together submitted one of two offers of judgment.
Rule 4:58-3, as it read when Schettino was decided and at all times relevant here,[1] provided in pertinent part:
If the offer of a party other than the claimant is not accepted and the determination is at least as favorable to the offeror as the offer, the offeror shall be allowed, in addition to costs of suit, a reasonable attorney's fee, for such subsequent services as are compelled by the non-acceptance, which shall belong to the client and constitute a prior charge upon the judgment. In an action for negligence or other unliquidated damages, however, no attorney's fee shall be allowed to such offeror unless the amount awarded to the claimant is in *1105 excess of $750.00 and is less than 80 per cent of the offer.
The judgment against all defendants in this case totalled $19,194. Plaintiff received two offers of $15,000 each. If both had been accepted, the offers, totalling $30,000, would have exceeded the total judgment. Had this been a single defendant case, or had there been a single offer of judgment in the amount of $30,000 on behalf of all defendants, a fee award would have been allowable under R. 4:58-3.
Only the procedural posture and history of this lawsuit are relevant to this appeal, and not the substance of the underlying disputes among the several parties. Inter-Link Financial, Inc. (Inter-Link), which operated a brokerage business, was dissolved as a result of serious disputes among its shareholders. Plaintiff, H. Ralph Cripps, and defendants Bernard DiGregorio and Theodore F. Kurilko, Jr., were shareholders in Inter-Link. Cripps filed what he described as a shareholder derivative action against DiGregorio and Kurilko, alleging joint and several liability for breach of fiduciary duty, violation of New Jersey RICO, N.J.S.A. 2C:41-1 to -6.2, misappropriation, conversion, and embezzlement. In an amended complaint, Cripps added H.R. Cripps & Associates (Associates) as a plaintiff,[2] joined Inter-Link as a defendant, and asserted additional claims against Kurilko alone, arising out of his separate business relationship with Kurilko in Associates. The first amended complaint added counts including fraud, oppressed shareholder rights, federal racketeering, breach of contract, and breach of an implied covenant of good faith and fair dealing. Finally, in a second amended complaint, Cripps added as defendants Michael W. Holden, Michael W. Holden, C.P.A., P.C. (collectively Holden), and On-Line Mortgage, Inc. (On-Line). Cripps' second amended complaint alleged that Holden and On-Line were jointly and severally liable, along with DiGregorio and Kurilko, for several of the earlier-filed charges against DiGregorio and Kurilko. The second amended complaint also alleged negligence, gross negligence, breach of contract, and breach of fiduciary duty against Holden in his role as the accountant for Inter-Link.
Cripps' liquidated claims against Kurilko alone, arising out of their separate business venture, were for $32,461.03 representing half the claimed capital expenses of the business, plus $21,846.85 representing loans or advances to Kurilko. The jury awarded Cripps $12,695 on these claims against Kurilko.
Cripps' liquidated claims against DiGregorio, Kurilko, and Inter-Link, jointly and severally, arising out of the Inter-Link enterprise totalled $27,042.55. In addition, Cripps sought unliquidated and punitive damages against DiGregorio and Kurilko, jointly and severally, for fraud, and similar damages against DiGregorio individually for fraud.
Finally, Cripps sought unliquidated damages against Holden on separate professional negligence and breach of contract causes of action arising out of his accounting services to Inter-link. Cripps claimed, it appears, that Holden's inadequate performance contributed to his damages at his partners' hands. The claim against Holden was thus a mix of liquidated and unliquidated damages.
Defendants DiGregorio, Holden, and On-Line (together the DiGregorio defendants) jointly filed and served upon Cripps an offer of judgment for $15,000 pursuant to R. 4:58 ("the DiGregorio offer"). On the same date, defendant Kurilko served upon Cripps and filed a separate offer of judgment for $15,000 ("the Kurilko offer").
*1106 The DiGregorio offer did not distinguish between and among the multiple counts against one or more persons. The Kurilko offer did not distinguish between the counts against Kurilko individually and those against DiGregorio and Kurilko jointly and severally. Each offer proposed to allow Cripps to take judgment against the offeror or offerors, but neither offer was conditioned upon acceptance of the other, and neither offer bound the other offeror(s). Cripps did not accept either offer; in fact, he never responded to either one.
Several counts of Cripps' second amended complaint were dismissed before trial. The jury returned the following verdicts on the remaining counts: a no-cause in favor of the Holden defendants[3]; $6,499 in compensatory damages against DiGregorio and Kurilko, jointly and severally; and $12,695 against Kurilko individually.
The trial judge subsequently denied the DiGregorio defendants' application for counsel fees and costs pursuant to R. 4:58. In their motion, those defendants sought $41,389.50 as DiGregorio's counsel fee, $1,246 as costs, and $2,378 as Holden's fee.[4] The judge concluded that a fee award to these defendants was prohibited by Schettino v. Roizman Development, Inc., 158 N.J. 476, 730 A.2d 797 (1999), and DeBrango v. Summit Bancorp., 328 N.J.Super. 219, 745 A.2d 561 (App.Div. 2000). The judge interpreted those cases to hold the offer-of-judgment rule inapplicable to any offer by fewer than all defendants in a multi-defendant, multi-count case, including claims of joint and several liability.
The judge noted that the offer-of-judgment rule "was clearly designed not to be a fee-shifting statute. It was designed to basically encourage early settlements where liability was genuinely in issue." He apparently reasoned that because plaintiff had the right and the obligation to make separate decisions on the DiGregorio and Kurilko offers, the risk identified by the Supreme Court in Schettino existed: that if plaintiff accepted one offer and not the other, plaintiff would face an "empty chair" defense at a trial against the defendant(s) whose offer was refused. The judge also noted that although Schettino was published after these defendants conveyed their offers of judgment, its publication preceded the trial, thereby placing all defendants on notice of its holding and giving them the opportunity to revise their separate offers into one. "The fact that an offer is not accepted does not preclude a further offer within the time herein prescribed in the same or another amount or as specified therein." R. 4:58-1.
The DiGregorio defendants admit in their brief that Schettino holds that "a single defendant who offers judgment for its pro rata share of a joint and several liability claim may not collect counsel fees under R. 4:58 if the plaintiff rejects the offer." However, they argue before us, as they did in the Law Division, that because their $15,000 offer and Kurilko's $15,000 offer were served and filed on the same day, the two offers should be considered together as one offer, although each was conveyed in a separate document. That argument has some facial appeal. We recognize that the two offers together made $30,000 available to plaintiff, and plaintiff thus had an opportunity to accept judgments totalling $30,000 in settlement of all his claims against all defendants. That is the same opportunity plaintiff would have had if defendants had jointly filed and served one pleading, offering *1107 judgment for $30,000. Obviously, plaintiff's total recovery against all defendants was substantially less than $30,000, but more than $15,000. Nonetheless, we reject the DiGregorio defendants' argument that the result here, mandated by Schettino, is an elevation of form over substance. That is because by presenting their offers as they did, defendants preserved for themselves the option of claiming either that they had made one total offer of $30,000 or two separate offers of $15,000 each, depending upon the outcome of the trial.
By conveying two separate offers, the defendants effectively preserved for themselves the opportunity to characterize their offers after learning the jury's allocation of responsibility. So long as the jury awarded total damages against all defendants at less than $30,000, they could collectively pursue fees and costs under Rule 4:58-3 by arguing, as they have, that the two offers should be viewed as one, even if one offeror suffered damages more than its $15,000 offer. On the other hand, if the jury's award against all defendants totalled more than $30,000, making the collective analysis unfavorable to fee claims by all defendants, then the propounder of one $15,000 offer who suffered a judgment less than $15,000 could seek an award under Rule 4:58-3 by arguing that its offer should be viewed alone. We think it plain that the offer-of-judgment rule should not reward what we view as defendants' impermissible attempt to hedge their bets. Defendants' separate offers allowed them to wait for the outcome of the trial to label their offers either as separate offers of $15,000 or one joint offer of $30,000. That is an undesirable result; it is inconsistent with the purpose of the rule to encourage early settlements. It is also unfair.
While the above-described risk is not explicitly addressed in Schettino or in the motion judge's opinion in this case, the potential for such abuse of the rule is apparent and leads us to conclude that the express language of Schettino remains applicable to the circumstances before us:
A plaintiff who has asserted that multiple defendants are jointly and severally liable for a claim is not subject to the financial consequences of Rule 4:58-3 for rejecting an offer by a single defendant[5] to settle its share of liability. The imposition of a financial penalty on a plaintiff for rejecting a settlement offer by a single joint defendant would undermine the purpose of joint and several liability. "Joint and several liability was designed to obviate a plaintiff's burden of proving which share of the injury each of several defendants was responsible for; the burden of proof is removed from the innocent plaintiff and placed upon the wrongdoers to determine among themselves." Applying the offer-of-judgment rule, however, would shift to plaintiffs, when evaluating the fairness of a settlement offer, the burden of determining a single defendant's share of liability. Rather, plaintiffs need consider only an offer to settle the entire liability on behalf of all defendants.
[158 N.J. at 484, 730 A.2d 797 (citation omitted).]
The judge addressed that very concern:
The problem is that where you have joint and several liabilityjust because each of the defendants put up $15,000.00 in this particular case, which turned out to be more than adequate, doesn't absolve the problem of joint and several liability.

*1108 Where you have joint and several liability, if someone is foundfor example, 60 percent responsible and in some instances in fraud, less than that, they can be held responsible for the entire judgment.
And so the difficulty is this. Why shouldwhy should the defendant have toI'm sorry. Why should the plaintiff have to accept the risk of loss of taking $15,000.00 from one defendant, then trying the case against the other defendant, for example, and the other defendant declaring bankruptcy or something like that happening. And then the plaintiff, by electing, has basically left him or herself out of luck.
Now it turns out in your case, in 20/20 hindsight, that that's not what happened. But you can't ever look at the at the offer of judgment rule through the eyes of 20/20 hindsight. Because if you did, people would know what happened and then they'd eitherwait, I accept that offer of judgment.
We are convinced that the trial judge correctly applied Schettino to this case. The express holding of Schettino, repeated in DeBrango, supports the motion judge's ruling. As the judge explained: "Had you both come forward and made a consolidated offer for $30,000 or whatever amount you felt you should have, you would have been able to use [the rule]."
In Schettino, the Court requested the Civil Practice Committee's recommendation for a rule to address the multi-defendant situation. 158 N.J. at 488-489, 730 A.2d 797. The Committee viewed its assignment as one for
consideration of whether the rule should permit an award of counsel fees to a single defendant in a multi-defendant action, where that defendant offers to settle the claim against it and the amount of the offer is greater than the judgment that the plaintiff obtains against all defendants.

[2000 Civil Practice Comm. Report to the Supreme Court, at 68.]
After considering the recommendation of the Civil Practice Committee, the Court thereafter amended R. 4:58-3 and adopted new R. 4:58-4, effective September 5, 2000. R. 4:58-3 as amended now provides:
If the offer of a party other than the claimant is not accepted and the determination is at least as favorable to the offeror as the offer, the offeror shall be allowed, in addition to costs of suit, litigation expenses and attorney's fees as prescribed by R. 4:58-2, and any such allowances shall constitute a prior charge upon the judgment. In an action for unliquidated damages, however, no allowances under this rule shall be granted to such offeror unless the amount awarded to the claimant is in excess of $750.00 and is less than 80 per cent of the offer.
New Rule 4:58-4 provides:
If there are multiple defendants against whom a joint and several judgment is sought, and one of the defendants offers in response less than a pro rata share, that defendant shall, for purposes of the allowances under R. 4:58-2 and -3, be deemed not to have accepted the claimant's offer. If, however, the offer of a single defendant, whether or not intended as the offer of a pro rated share, is at least as favorable to the offeree as the determination of total damages to which the offeree is entitled, the single offering defendant shall be entitled to the allowances prescribed in R. 4:58-3, provided, however, that in an action for unliquidated damages the offeree has received at least $750 and that single defendant's offer is at least 80% of the total damages determined.
[Emphasis added].
*1109 The offers of judgment at issue here preceded September 5, as did the jury's verdict. The motion was argued and decided on May 11, 2001. Apparently, neither the attorneys nor the judge were aware of the amended rule, and its potential application to this case was not addressed. But even if the amended Rules 4:58-3 and 4:58-4 were to apply, they would not change our reasoning or the result here. Neither Holden nor DiGregorio, by their joint offer of judgment of $15,000, can be said to have offered an amount "as favorable to [Cripps] as the determination of [$19,194] total damages...." R. 4:58-4.
We are well aware that not all of plaintiff's claims against all defendants were joint and several. But that fact serves only to emphasize the difficulty in applying the offer-of-judgment rule in multi-defendant, multi-count cases, where fewer than all defendants are named in some counts, and both liquidated and unliquidated damages are sought. Undoubtedly, there will be other cases in which various permutations and combinations of parties and claims will arise. The continuing applicability of Schettino under the amended offer-of-judgment rule has yet to be determined. Despite the rule change in 2000, the facts in this case suggest that application of the rule may continue to be problematic. Courts will have to determine just when and how to apply Rule 4:58. We confine our opinion to the case before us, and we conclude that the order denying these defendants' fee application was well supported.
In light of our decision today, we need not address plaintiff's argument that the fee request was untimely.
Affirmed.
NOTES
[1] The offer-of-judgment rule has since been amended, as we shall explain below.
[2] We will refer to Cripps & Associates as "plaintiff" in the singular.
[3] The jury found Holden negligent but that his negligence was not a proximate cause of any damage suffered by Cripps.
[4] Kurilko did not seek a counsel fee award.
[5] In this case, DiGregorio and Kurilko were allegedly jointly and severally liable on certain counts, along with Holden. Thus neither offer was made on behalf of all jointly and severally charged defendants.